# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

*****

RACHAEL MARTIN (HOLT) and,
MATTHEW JOHNSON,

   CASE No.

 Plaintiffs,

   HON.

v.

FENNVILLE PUBLIC SCHOOL DISTRICT;
DIRK WEELDREYER, Superintendent,
in his Official and Individual Capacities;
KIM ZDYBEL, Principal,
In her Official and Individual Capacities:
TROY DUSEK, Title IX Coordinator/Student
Success Coordinator,
In his Official and Individual Capacities;

 Defendants.

_____/

Rachael Martin (Holt)
Matthew Johnson
IN PRO PER
15940 144th Street
Spring Lake, MI  49450
(231) 730-5201
raeram2020@gmail.com

**FILED - KZ**
March 1, 2021 2:23 PM

U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
__mg__ Scanned by ___ 3/1/21

**1:21-cv-202**
Robert J. Jonker
 Chief U.S. District Judge
Ray Kent
 Magistrate Judge

---

## VERIFIED COMPLAINT AND JURY DEMAND

*This cause of action arises from the Respondents' deliberately indifferent response to a student-on-student physical assault on school premises and subsequent sex-based harassment. The Respondents' failure to promptly and appropriately investigate and respond to the assault subjected Matthew Johnson to further gender based harassment and a hostile environment, effectively denying him access to educational opportunities.*

*This claim alleges violations of Title IX of the Education Amendments of 1972, which prohibits discrimination on the basis of sex; the denial of equal protection of the laws under the*

1

*Fourteenth Amendment to the U.S. Constitution, and denials of procedural and substantive due process under 42 U.S.C § 1983.*

Plaintiffs, Rachael Holt and Matthew Johnson (minor), In Pro Per, hereby file the following complaint against Defendants as captioned above.

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

2. The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under the color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

3. Plaintiff Matthew Johnson ("Johnson") brings this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as more fully set forth herein.

4. This is also an action to redress the deprivation of Johnson's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

5.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all Defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

## II. THE PARTIES

6.  Plaintiff Matthew Johnson is a male and was a minor at all material times during the events complained of herein and remains a minor as of the date of the filing of this Complaint.

7.  At all material times, Plaintiff was a resident of the County of Allegan, State of Michigan when the events occurred.  Plaintiff Johnson currently resides in the state of Mississppi and is claiming damages in excess of $75,000.00.

8.  At the time of the events complained herein, Plaintiff Johnson was a student attending a middle school within the Defendant FENNVILLE PUBLIC SCHOOL DISTRICT ("the School District or Fennville").

9.  Plaintiff Rachael Holt ("Holt") is the Mother of Matthew Johnson and is his legal guardian during the events complained of herein and remains so as of the date of the filing of this Complaint.

10.  At all material times, Plaintiff Holt was a resident of the County of Allegan, State of Michigan when the events occurred.   Holt is currently a resident of the state of Michigan and is claiming damages in the excess of $75,000.00 on the behalf of Johnson.

11. The Defendant School District is a public educational institution located in the County of Allegan, State of Michigan.

3

12. At all material times, Defendant DIRK WEELDREYER ("the Superintendant"), in his official and individual capacities, worked within the County of Allegan, State of Michigan.

13. During all material times, the Superintendant was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of his employment and his employer.

14. At all material times, KIM ZDYBEL, (the "Principal"), in her official and individual capacities, worked within the County of Allegan, State of Michigan.

15. During all material times, the Principal was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of her employment and his employer.

16. At all material times, Defendant Troy Dusek, (the "Title IX Coordinator"), in his official and individual capacities, worked within the County of Allegan, State of Michigan.

17. At all material times, the Title IX Coordinator was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of his employment and his employer.

18. At all material times, Plaintiff's attackers, were male minor students attending the Defendant School District.

### III. COMMON ALLEGATIONS

19. At all material times, the School District was receiving federal funding as contemplated by Title IX, 20 U.S.C. § 1681, *et. seq.*

20. The Fennville Public School District has adopted anti-harassment policies in the Fennville Middle School Student Handbook.

4

21. The School District implemented and executed policies and customs in regard to the events that resulted in the deprivation of Plaintiff's constitutional, statutory, and common-law rights.

22. The School District is responsible for ensuring that all its employees are properly trained and supervised to perform their jobs.

23. The School District is responsible for the acts and omissions of its employees.

24. At the time of the attacks that gave rise to the events complained of herein, Plaintiff Johnson was a fifteen (15) year old at Fennville Middle School.

25. Johnson has ADHD and has been in a Special Education Program since elementary in the Bloomingdale School District.

26. Johnson was transferred to Fennville during the 8th Grade but Fennville would not honor Johnson's special education program.

27. Johnson was struggling academically and needed the additional assistance that Special Education could provide.

28. At the time of the attacks that gave rise to this action, the other male students were Johnson's classmates.

29. During the time prior to the incident in which the other male student intentionally broke Johnson's collar bone, he had made a couple of off handed comments that the other kids might be trying to hurt him to Holt.

30. Holt thereafter also a couple of times found him crying, but Holt always chalked it up to a bad day.

31. On September 15, 2016 at approximately 7:00 pm Matthew Johnson was in Fennville, Michigan at the Middle School Football game with several of his friends.

32.  The boys engaged in a game of touch football in the middle school soccer field, while the school game went on. Some of the other male students playing were Cruz Flores, Dylan (last name unknown), Wyatt Clemmins, Ace Flores, Brody Peterson and Johnson.

33.  Johnson had the football and was running down the field trying to score a touch down and Dylan intentionally put his foot out and tripped Johnson who was running quickly and was sent down on his head, neck, and shoulder.

34. After the fall, while Johnson was sitting on the ground attempting to recovering, holding his shoulder in pain, and Cruz Flores ran up and shoved him backwards.

35.  After the incident Johnson was not able to continue in the game due to the injury he sustained, he went and got his sister Parris Johnson and had her call and get them a ride home.

36.  Once Matthew Johnson and Parris Johnson got home, Lonnie Holtsclaw a family friend had given them a ride, their mother Rachael Holt brought them to the Allegan County Emergency Room so that Matthew Johnson could be seen by a physician.

37.  At that time the Emergency Room determined that he had multiple fractures, they adorned him with a sling and gave him pain relievers. Johnson was discharged later that evening and was in incredible pain for a considerable amount of time.

38.  On September 16, 2016, Johnson attended school despite having a doctor's note to excuse his absence due to his broken collar bone.

39.  First thing that morning when Johnson got to school, Cruz Flores and Dylan immediately started to bully and intimidate Johnson by shoving him up against the lockers, pushing up on him while verbally abusing him, telling him that he was too scrawny and weak, calling

6

him a twig, and saying that he "broke too easily." Cruz Flores and Dylan told Johnson

that he shouldn't participate in sport activities because he was fragile.

40. Being pushed roughly against the lockers was extremely painful and humiliating to

Johnson with his freshly broken collar bone, and now to add insult to injury the parties

responsible for his fracture were harassing him, causing more physical pain, as well as

now emotionally abusing him.

41. Throughout the day and the following week Cruz Flores started to become more

aggressive with his bullying towards Johnson including to "fake out" Johnson (acting like

he was going to hurt or harm Johnson's already injured shoulder), which instigated more

students to single Johnson out with more bullying.

42. On November 04, 2016, Holt called the Fennville Middle School and talked to the

school secretary at that time in regard to Johnson's grades and requested to speak to the

principle or special education teacher in regards to his educational needs.

43. On November 09, 2016, Holt went to Fennville Middle School because Johnson was

ineligible to play due to his grades and she wanted Defendant Zdybel (the Principal) to

make an exception and allow him to play basketball because Holt wanted to use it to help

Johnson improve his grades on his own with his own motivation. Holt also wanted to

schedule a meeting with the teachers and to schedule testing Johnson again for special

education due to his poor grades.

44. The next week Johnson was allowed to play (November 14-18 2016).

45. On November 23, 2016, Johnson quit basketball and told Holt it was because he wanted

to focus on his grades and due to the problems he was having, specifically with Cruz

Flores during basketball.

46. On November 29, 2016, Johnson and his sister, Parris Johnson, attended scheduled well-child Pediatrician appointments with Holt.  It was at this time it was learned about the extent of the gender-based bullying that Johnson was experiencing.  Tt this appointment Johnson told Holt and his doctor that he was being bullied at school including; the event that happened surrounding his collar bone being broken, the continuation of Cruz Flores mocking him and the physically bullying, and Sunny Gonzalez who was a class mate (in Math) had started to touch Johnson inappropriately, touching him repeatedly on his buttocks despite Johnson telling him to stop and leave him alone.  This only fueled this sexual harassment and then Cruz started doing it as well.  This began a month before the doctor's visit.

47. After the doctor's appointment, Holt dropped Johnson and his sister back off at school. Thereafter, Holt called Defendant Zdybel and told her about Johnson being bullied and again requested a meeting for his grades. Defendant Zdybel told Holt she would get back to her and was very defensive on the telephone.

48. On December 2, 2016, Holt called and talked to the school office secretary, Deb Morse, and left a message for Defendant Zdybel again requesting a meeting with teachers and special education as Johnson continued to fall behind.

49. During the week of December 5-9, 2016, Johnson began to struggle to keep hold of things around him. The weight of the sexual harassment really came down hard this week for him. Sunny and Cruz had become comfortable sexually touching him about 3 times a week, mostly in Math class.  The math teacher, Mr. Mark Gray was not overly attentive so Sunny easily got away with touching Johnson unnoticed by the teacher.

50. On December 8, 2016, Holt went back up to the school again and went into the office of Defendant Zdybel and told her that she was frustrated about the lack of progress and interest they were taking in Johnson's success. Johnson expressed that this was the fifth time she had requested an appointment with Johnson's teachers in regards to his grades and the sexual based bullying. Holt told Defendant Zdybel that the bullying and failing grades were so bad she was considering home schooling Johnson. Defendant Zdybel told Holt in a nasty sarcastic manner "that is your prerogative." Holt said she wanted the meeting as she should not have to pull Johnson out of school.

51. On December 9, 2016, Defendant Zydbel called Holt and said she had scheduled a meeting for Wednesday December 14, 2016 at 1:00 p.m.

52. Johnson has a real bad weekend the weekend of December 9, 2016. He was very down, depressed and crying. When Holt asked him about it he wouldn't talk about what was going on and blamed stress.

53. On Tuesday, December 13, 2016, Johnson went to his mother Rachael Holt and told her that the gender-based bullying that he was enduring was simply too much, and that he had quit the Basketball Team to help avoid some of his confrontations that he was experiencing with Cruz Flores during those practices. Cruz Flores was using the time outside school to further torment Johnson by shoving and pushing him around.

54. Johnson was still recovering from the broken collar bone and cleared to play sports but feared that Cruz Flores might deliberately injure him again and stated that Cruz Flores was also using their team mate status to justify further sexually harassment and unwanted physical contact in the way of buttock grabbing and pinching. Flores also was trying to look at and watch Johnson while they were in the restrooms and locker rooms, he was

kicking and talking badly about Johnson, Cruz Flores had started to slander Matthew and spread rumors about him and trying to turn the entire student body against Johnson. Cruz Flores had started to delight in verbally abusing Johnson. Some specific types of phrases he used were "pussy" and "twig" but most of his torment was physical. His male class maters were trying to pull his pants down as well. He didn't want to go to school, he felt outcast and alone.

55. On December 14, 2016, Rachael Holt went in to her meeting at 12:00 p.m. that took over a month for her to finally be able to make contact with her son's educators and hope to shed some light on the problems he was having. She brought her sister-in-law Alice Murray-Martin with her to the meeting as a witness.

56. The meeting started with Mr. Mark Gray the Math Teacher who started off by saying that Matthew was a polite respectful young man who participated most days and went through time that he tried it seemed and that he struggled some days to focus. And then there were other days when he would come in to class and put his hood down over his head and almost get into the fetal position at his desk and on those days he knew he was not going to function and that he was not going to get anything from him.

57. Holt was very upset about this and wondered why she wasn't made aware of that type of behavior from the School District.

58. Next Johnson's Social Studies teacher, Laura Lesiewicz, who commented that Johnson and her had butted heads a few times early in the year but nothing major and that her largest concern was Johnson staying prepared.

59. Then Mr. Troy Dusek who is the vice-principal was in charge of discipline for the school. He told Holt that he was unaware of any bullying and that he was displeased to

hear about it that he would look into it further and that if Johnson should have any further problems he should come directly to him with those issues.

60.  Holt then expressed her concerns about how the bullying and his medication affected his learning abilities and that Johnson had been in special education since first grade and wanted him re-tested.  She told the faculty and administrators that the other male students called Johnson weak, fragile, stupid, worthless, pretty boy.  She also told them about the physical violence by pushing him into lockers while he was already injured, slapping him, pinching him and sexual harassment which has been protested against.

61.  Defendant Troy Dusek responded with "well boys will be boys and they do that in sports and stuff all the time." Holt stated it was unacceptable and that Johnson has to quit basketball because of it all.  Dusek re-assured Holt he would look into it and get back to her about it. Zydbel said that she didn't know the extent of the issue, that they would get Johnson tested and they would start looking into the bullying that she would e-mail all the teachers so they could look for any sexual harassment and watch out for Johnson's safety. They would be watching and if there were any further incidents they would contact Rachael. Zydbel closed the meeting saying that she really felt like they had made this mostly academic but in light of new information with how deeply the bullying issue was going for Matthew, and how things have escalated and the harassment he was ensuing was sexual and now what are we going to do about it, how are we going to handle it from here and did not want it to continue.

62.  The following week was Christmas Vacation and the school was closed.

63.  On January 13, 2017, Johnson had his first appointment with his physiatrist, in regards to his medication.

11

64. On January 16, 2017, Johnson was harassed by Sunny Gonzales during first period (Gray's Math class) as Sunny came up behind Matthew while he was getting a calculator in class and grabbed his buttocks and upper thigh area from behind.  Johnson walked away from Sunny and to his seat and continued his work because he was afraid to make a scene. Later that day he saw Defendant Dusek in the halls and told him about the incident.  Johnson reported the incident to Holt after he came home from school.

65. On January 19, 2017, when Johnson came home from school he told Holt that in Gray's Math Class Sunny Gonzales rubbed his leg during class and told him that he liked his pants and shoes while he continued to rub Johnson's leg.

66. Later that afternoon Johnson talked to Defendant Dusek about that day's incident and the other from January 16.  Defendant Dusek brought both Johnson and Sunny Gonzales into his office at the same time. Sunny accused Johnson of doing the same thing to him, that he was doing to Johnson. Johnson stated "no I have not, that's not true, I have never touched you, or called you names." Dusek instructed both boys not to touch or tease each other, and to come tell immediately if any further problems should ensue.  Johnson told his mother Holt about the incident after school that day.

67. On January 20, 2017, Lonnie Holtsclaw and Rachael Holt first went by the Fennville Police Department to file a formal sexual harassment complaint about the problems Johnson was having at school. Holt was told by the police officer that he was on his way to court, and he knew Dusek very well at the middle school and he recommended that she go back to the Middle School and allow them to help resolve these problems.  They proceeded on to the Middle School and spoke with Dusek. Holt inquired about the incidents on the Jan 16 and Jan 19 with Sunny Gonzales.  Dusek stated he had spoken to

both boys and informed Holt that he believed that Johnson was involved in the same type of behavior and actually bringing the sexual harassment down on himself. Holt wanted to know if Johnson had said he did that, if he or one of the teachers had witnessed it. Dusek stated that Johnson admitted to acting in the same manner with Sunny Gonzales and that the Math teacher Mr. Gray had witnessed it. They called for Johnson to come down to the office. When Johnson first came in and sat down Dusek proceeded to talk to him about the issues, telling him that he thought they had these problems resolved and that he was disappointed with how things were playing out. As he spoke, Johnson's posture slumped and he seemed to really be wearing the weight of this burden and his shoulders were dropped and head down. After Dusek finished speaking Holt looked at Johnson and asked him "son, have you ever touched any of those boys?" Johnson looked at her, and you could see him sit up and look them all in the eye and he very clearly stated "Mom, I have never touched any of those boys." Then Holt requested that Mr. Gray come down and explain what he saw Johnson allegedly bullying others, or he himself asking to be sexually harassed. When Mr. Gray came in they asked him if he had seen Johnson touch any of the other kids, to which he answered that the other day he had seen Johnson laying over his desk and when he came into the class Johnson jumped up and to his seat and that perhaps he was opening himself up at that point to certain behaviors. Holt asked if he had seen Johnson touch any of the other students to which Mr. Gray answered "Well, No." Holt said "then I don't even know why your down here, because you folks said you had witnessed my son touching other students, and that's not true, he is being harassed and you are trying to turn this around on him like he is doing something wrong, and it's not right." Mr. Gray returned to his class, as did Johnson.

68.  Holt and Lonnie Holtsclaw were finishing up their time with Dusek and gathering their coats and Holt asked Dusek if they had a date scheduled in special education for Matthew to be tested.  Dusek called Mr. Kenneth Pierson (School Psychologist Intern) who was not even aware that Johnson required testing but would immediately work on getting it set up.  The meeting ended.

69.  On January 23, 2017, Zydbel called to inform Holt that she had had a meeting with herself, Dusek, Sunny Gonzales and his parents and that he was claiming Johnson behaved in the same manner and that he had been warned no further instance would go unpunished and that from here on the consequences would be severe and that she wanted Holt and Johnson to understand the same thing on their part. During the conversation, Defendant Zydbel continued place blame on Johnson even though he was the victim. Holt defended her son and then asked about the special education testing that no one was aware of in the last meeting to which Zydbel replied "h, I will get right back to you on that…"

70.  Later that afternoon Mr. Pierson called Holt and set up a meeting for her on Monday, January 30, 2017 to discuss Special Education testing for Johnson.

71.  On January 23, 2017, during first period (Mr. Gray's Math class), Johnson was sitting in his regularly assigned seat next to Cody Fryer, Everato (last name unknown), and Jesus (last name unknown).  Some of the boys at the table were a little rowdy and were talking. Johnson said that he was trying to focus on his work and Cody was asking him for answers and it drew the attention of Mr. Gray. He came over and told the boys he was going to separate one of them, either Cody or Johnson, he told them to rock, paper, scissors for the move.  Johnson declined the game, saying he didn't wanna play, or move,

14

that he was trying to work and that it wasn't necessary. Mr. Gray elected to move Johnson.  Johnson was moved to an isolated seat in the middle of the groups of tables of his peers working together. He stayed there for the remainder of the day, working alone.

72.  Later that afternoon after school, Johnson came home very upset saying that now the teachers were treating him funny and different that he had to sit alone and do the work. He said "mom, I need to sit in a group, I can't do the work by myself."

73. On January 24, 2017, when Johnson went into Math class he tried to take a seat in his originally assigned seat but was immediately singled out and moved by Mr. Gray to the same isolated seat he had sat at the day before. He stayed there all day forced to do the work alone that his peers were permitted to do as groups.

74.  On January 25, 2017, again Johnson was forced to sit alone during Math for the entire class period.

75.  On January 26, 2017, when Johnson was entering Mr. Gray's Math class he decided to take a different approach and sit at a different group table that happened to have a seat open. The Group consisted of Rico (last name unknown), Sunny Gonzales and one other person.  Rico was Johnson's friend and that was the only open group seat. Again Mr. Gray immediately moved Johnson to the isolated seat in the middle of the floor, where he was forced to stay for the remainder of the class.

76.  On January 27, 2017, when Johnson went into first period Math Mr. Gray had new assigned seats for all the students.  In this new seating chart, Johnson was directly in the front middle of the class.

77.  On January 27, 2017, Ms. Jessica Stanley (Special Education/Math Interventions teacher) called Holt to say that Johnson was moved on Monday because of mis-behavior

and he has been trying to sit with perpetrator every day since then, and we don't understand that why if he is being bullied so hard does he want to sit in a group with him. Holt replied, "well that isn't my understanding of what is going on, and I have a meeting on Monday Johnson to be tested for special education, so we can just go ahead and extend that meeting and address this situation at that time.

78. On January 30, 2017, Holt and Alice Murray-Martin went to the Fennville Middle School for the 8:00 a.m. for the results for Johnson's IEP testing with Mr. Pierson. but there was an incident the week previous so they were going to address that also. Ms. Stanley started the meeting by reading an observation from the class, that the entire math class was in groups except for Johnson who was made to work alone and isolated from the rest of the group. Next, Holt began to again address her concerns of Johnson's bullying and the sexual harassment, at which Defendant Zydbel proclaimed she was un-aware of any harassment, even though they discussed it in the previous meeting. At this point Murry-Martin stated the District and them were all aware of these issues because they discussed them in the last meeting. Mr. Gray was called out of the class room to the meeting and again stating that Johnson may be bringing all of the bullying and sexual harassment on himself. Zydbel watched Gray's class until she found someone to cover her. Holt became very upset and Zydbel staetd Johnson should not have been singled out. Dusek acted shocked and unware. Holt stated Johnson's needs were being pushed aside and nothing was being done about the sexual harassment and bullying.

79. Gray was told by Zydbel to do another new seating chart implemented in his class beginning the next day, that Johnson and the rest of the students could all be comfortable with.

80.  January 30, 2017, new seats were once again assigned to the whole Math class (first period/Gray).

81.  On January 30, 2017, Johnson had gym at fourth period.  Johnson was standing outside the gym doors waiting for the class to enter the room together amongst this peers. Johnson was talking to his friend Everato as they waited to go in and stated the he was excited to go into class saying that it was "going to be lit."  Immediately Cruz Flores became confrontational and hit Johnson repeatedly. Johnson said that he was humiliated and hit about four times in the stomach and chest in front of the other students and in **front of a camera while waiting to enter the class**.  Johnson told Holt about it and she insisted that first thing the next day he go and tell Dusek about the incident.

82.  On February 3, 2017, Johnson went into the bathroom near Dusek's office and the RTC room (between 1ˢᵗ hour and summit).  Cruz Flores followed Johnson in, unknowingly to Johnson, who walked up to use the urinal.  From behind, Flores kicked Johnson in the back of the knee, touched his buttocks and was attempting to look around towards Johnson's genitals, all the while asking if Johnson "liked that or not."  Johnson was so uncomfortable and embarrassed by it, that he cried every day when he got home from school and was becoming severely depressed about the gender based bullying and sexual harassment. Johnson texted his mother in regards to the incident and she told him to go immediately to Dusek about it.  Johnson reported the incident and also the one with Flores from January 30 in the gym.   The school had security cameras in both areas. Later Johnson and Holt found out Cruz Flores only received a one day in school suspension from a telephone call from Dusek who only stated "he handled it."

83. On February 21, 2017, Johnson had his first appointment with his counselor to discuss what was happening at school.

84. On March 9, 2017, Holt had a meeting to go over Johnson's special education test results which stated he has a deficient/below average in mathematics and writing, borderline reading and that soon he would be receiving special education services.

85. On March 16, 2017, Holt attended parent teacher conferences and only spoke with the science teacher and math intervention teacher, Ms. Stanley, due to recent contact with the rest of the teachers.

86. On March 17, 2017, while Johnson was in science class (with Mr. Matt Okma) the students needed scissors and were told to gather materials so while Johnson was getting the scissors, he passed them out to some of the students and he got told not to pass them out, that they could all get their own and that Johnson should sit down.

87. When the students were finished with the scissors Johnson's friend gathered them up for the class and put them away, Mr. Okma thanked him for that. Okma was handing out work packets and Johnson made an off handed comment about why they always have to do so many packets and Okma got very upset and started screaming about how its not his fault and how the school required them.

88. Neither the individual Defendants or the School District ever called to file a police report for the sexual assaults on Johnson by his male classmates.

89. Upon information and belief, the School District was fully aware of the sexual assaults.

90. Johnson suffered a great deal of ridicule, teasing, taunting, bullying and violent outbursts from the other male classmates.

100. During April 2017, Johnson began at Bloomingdale Middle School.

101. On December 30, 2017, Holt moved Johnson and the entire family out of state because Fennville, Michigan could no longer be called home.

102. During January 2018, Johnson was homeschooled in Florida, but was not working out due to internet issues.

103. During July 2018, Johnson moved to Bay St. Louis, Mississippi with his Father. Johnson is enrolled at Hancock High School.

104. In November 2018, Johnson went to a male student's house to "fight" him because the student was bullying a female classmate. Johnson was reminded of what happened to him in Fennville Schools. The male student was not home.

105. Johnson is currently getting good grades in school and has been seeing the school counselor since the incident in November 2018.

106. Johnson is currently in 11th Grade.

107. Johnson currently lives with his Uncle in Mississippi and his father lives down the road.

108. Plaintiff's sister has also been deeply affected and is now estranged from the rest of the family due to not being able to cope with what happened to Johnson.

109. The school has a Title IX coordinator and at no time was Johnson or his family ever advised of their legal rights to request an investigation, and that a Title IX complaint could be filed.

110. Johnson has subsequently been diagnosed with severe and permanent medical conditions as a direct result of the sexual bullying and sexual assaults from his male classmates.

91. Johnson had to endure the sex-based harassment every day in school including have to see these other students in the classrooms and the hallways.

92. Johnson who once loved going to school was terrified.

93. Johnson, Holt, and the entire family are suffering extreme emotional distress due to the sexually based harassment which continues today.

94. Shortly after the sexual assaults began, Johnson began counseling and continues that counseling which will be needed for the rest of his life.

95. The Defendants did not take appropriate action and allowed the other male students in the school having direct and daily contact with Johnson despite direct knowledge of the sexual assaults and sexual based bullying.

96. Despite their immediate and continuing duty to investigate and address the sexual assaults/gender based bullying, the School District officials conducted virtually no or very little investigation at all of the assaults on Johnson or the continuing sex-based harassment/bullying.

97. Upon information and belief, despite knowledge of the sexual assaults/gender based bullying, the Principal was not proactive in removing the male students out of school including suspension and or expulsion.

98. The Principal knew or should have known immediately about the assault after September 15, 2016 through other faculty members who had personal knowledge of the physical assaults.

99. During April 2017, Johnson was being harassed and bullied so bad by the other male classmates that Plaintiff's Mother Holt permanently removed Johnson from the Defendants School District.

19

111. Because of Johnson's ongoing complaints to the school district of the sexual based bullying and assaults, throughout the rest of the 2015-2016 school year, his male class mates verbally and physically harassed and frightened Johnson as he went in and out of classrooms and the hallways, and around the Middle School campus, including in the gym, and athletic fields, both during and after school.

112. Johnson's education and his learning have been permanently affected by these male class-mates, the Defendants and the School District.  Johnson has fallen behind two years in his educational studies.

113. Plaintiff Johnson filed on March 6, 2017 a Title IX Complaint with the United States Department of Education Office for Civil Rights, Region XV alleging that the District failed to promptly and appropriately responds to alleged sexual harassment/gender based bullying, resulting in a student, on the basis of sex, being excluded from participation in, being denied the benefit of, or being subjected to discrimination in any District Education Programs or activities in violation of the Title IX implementing regulation at 34 C.F.R. § 106.31; along with Section 504 of the Rehabilitation Act of 1974 and Title II of the Americans with Disabilities Act of 1990 which prohibit discrimination on the basis of disability.

114. Plaintiff's Mother also complained that the District failed to notify her that there were grievance (filing/appeal) procedures (including the filing of Title IX Complaint) that incorporate appropriate due process standards and that provide for the prompt and equitable resolution of student complaints under Title IX in violation of Title IX implementing regulation at 34 C.F.R. § 106.8(b).

115. Plaintiffs holds all of the Defendants (the Fennville Public School District, the Superintendent, the Title IX Coordinator and Principal liable for the damages sustained as a result of the deliberate inaction, failures and negligence of the School District by failing to provide a safe environment for the children attending its schools including Matthew Johnson.

116. Plaintiff Johnson's personal damages include those arising from his psychological distress, loss 8of standing in his community, and damage to his reputation, that continue as of the date of the filing of this lawsuit in addition to the extreme emotional distress of Plaintiff's mother and her lost economic damages for having to move out of State.

117. Plaintiff Johnson suffered sex-based harassment that was severe, pervasive, and objectively offensive.

118. The sex-based harassment deprived Plaintiff Johnson of access to the educational opportunities or benefits of the school.

119. School District officials including Defendants, Weeldreyer, Zdybel and the Title IX Coordinator had the authority to take remedial action to correct the sex-based harassment.

120. The School District and Defendants had actual knowledge of the sex-based harassment.

121. The School District and its Defendants responded with deliberate indifference to the sex-based harassment.

122. Plaintiff Johnson became afraid to stay after school and stopped participating in basketball and other sports and withdrew from attending school events.

123. Plaintiff Johnson found it difficult to concentrate in class that resulted in many absences from school and spent hours outside of the classroom due to his emotional distress and anxiety.

124. Plaintiff Johnson required and continues to require mental health counseling and medication for depression and anxiety to cope with the stress of having attended Fennville Middle School.

125. Plaintiff's failing grades were a direct result of the gender based bullying and being denied special education that was needed for success.

126. The Defendant School District's response and its officials' conduct was such that future reasonable students in Plaintiff Johnson's circumstances would be chilled from reporting sexual harassment.

127. As a direct and proximate result of the harassing educational environment created by Defendants' deliberately indifferent response to the sexual assault and subsequent gender based bullying/harassment, as well as violations of her Fourteenth Amendment rights, Plaintiff Johnson has suffered and continues to suffer psychological damage, emotional distress, loss of standing in his community, and damage to his reputation, and his future relationships have been negatively affected.

128. Plaintiff Johnson has required ongoing counseling to assist his depression and anxiety caused by Defendants' conduct and the resulting harassing educational environment.

129. Plaintiff Johnson has also been deprived of a normal childhood education due to Defendants' conduct and the resulting educational environment.

130. Plaintiff Johnson has also been damaged by missed educational opportunities and his future learning capabilities have been damaged by Defendants' conduct and the resulting hostile educational environment.

**COUNT I**
**VIOLATION OF TITLE IX**
**AS TO DEFENDANT FENNVILLE PUBLIC SCHOOL DISTRICT**
**(20 U.S.C. § 1681, *et seq*.)**

**(The School's Deliberate Indifference
to Alleged Sexual Harassment)**

131. Paragraphs one through 130 are incorporated by reference as if stated in full herein.

132. The sex-based harassment articulated in the Plaintiffs' General Allegations was so
severe, pervasive, and objectively offensive that it deprived Plaintiff of access to
educational opportunities or benefits provided by the school.

133. The Defendant School District created and/or subjected Plaintiff to a hostile educational
environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §
1681(a) ("Title IX"), because

    a) Plaintiff was a member of a protected class;

    b) he was subjected to sexual harassment in the form of sexual assaults and gender
based bullying by other male students;

    c) he was subjected to harassment based on his sex; and

    d) he was subjected to a hostile educational environment created by the School
District's lack of policies and procedures and failure to properly investigate and/or
address the sexual assaults and subsequent sexual harassment/bullying.

134. Defendant School District and its officials had actual knowledge of the sexual assaults
and the resulting sexual harassment of Plaintiff created by its failure to investigate and
discipline Plaintiff's attackers in a timely manner and consistent with its own policy and
federal and state law.

135. The Defendant School District's failure to promptly and appropriately respond to the
sexual harassment, resulted in Plaintiff, on the basis of his sex, being excluded from
participation in, being denied the benefits of, and being subjected to discrimination in the
District's education program in violation of Title IX.

136. Defendant School District failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment and instead acted with deliberate indifference toward Plaintiff.

137. Defendant School District persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Plaintiff.

138. Defendant School District engaged in a pattern and practice of behavior designed to discourage and dissuade students and parents of students who had been sexually assaulted from seeking prosecution and protection and from seeking to have sexual assaults from being fully investigated.

139. This policy and/or practice constituted disparate treatment of males and had a disparate impact on male students.

140. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a) states that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ....

141. Title IX is implemented through the Code of Federal Regulations.  See 34 C.F.R. Part 106.

142. 34 C.F.R. § 106.8(b) provides:

> ... A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

143. In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds

25

intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

144. In *Davis v. Monroe County Board of Education,* 526 U.S. 629 (1999), the United States Supreme Court extended the private damages action recognized in *Gebser* to cases where the harasser is a student, rather than a teacher.

145. *Davis* held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is

a) deliberately indifferent to sexual harassment of which the recipient has actual knowledge and

b) the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to educational opportunities or benefits provided by the school.

*Davis,* 526 U.S. at 1669-76.

146. Plaintiff has suffered emotional distress and psychological damage, and his character and standing in his community have suffered from the harassment fostered as a direct and proximate result of Defendant School District's deliberate indifference to his rights under Title IX.

### COUNT II
### VIOLATION OF TITLE IX
### AS TO DEFENDANT FENNVILLE PUBLIC SCHOOL DISTRICT
### (20 U.S.C. § 1681, *et seq.*)
### (Retaliation by Withholding Protections Otherwise Conferred by Title IX)

147. Paragraphs one through 146 are incorporated by reference as if stated in full herein.

148. Immediately after Plaintiff's Mother advised the Defendant School District directly to the Principal, she failed to report the sexual assaults/bullying to the Defendant School District.

149. The Principal did nothing and refused to act in accordance with reports from both the Plaintiff's mother and other staff.

150. Even though Plaintiff and his Mother insisted upon involving law enforcement for a criminal investigation, the Principal and the other School District officials retaliated against Plaintiff by declining to investigate the matter or to otherwise comply with their responsibilities as mandated by Title IX.

151. Fellow male students increased the harassment/bullying towards Plaintiff for reporting the attacks to the school and police. Plaintiff's Mother reported this harassment to School officials, who declined to intervene to stop it.

**COUNT III**
**1983 VIOLATION AS TO**
**DEFENDANTS FENNVILE PUBLIC SCHOOL DISTRICT,**
**WEELDREYER, ZYDBEL, and TITLE IX COORDINATOR**
**(42 U.S.C. § 1983)**

152. Paragraphs one through 151 are hereby incorporated by reference as if set forth in full herein.

153. Under the Fourteenth Amendment, Plaintiff had the right as a public-school student to personal security and bodily integrity and Equal Protection of Laws.

154. Defendants Weeldreyer, Zydbel, and Title IX Coordinator were all state actors acting under the color of state law.

155. Defendants each subjected Plaintiff to violations of his right to personal security and bodily integrity and Equal Protection of Laws by: failing to investigate male class-mates

27

misconduct; failing to appropriately discipline the perpetrators; failing to adequately train and supervise Weeldreyer, Zdyble and Title IX Coordinator; and manifesting deliberate indifference to the sexual assaults and ongoing sexual harassment of Plaintiff by other male students.

156. The School District has and/or had unconstitutional customs or policies of

a) failing to investigate evidence of criminal and tortious misconduct against School District students in the nature of violations of their right to personal security and bodily integrity and

b) failing to adequately train and supervise School District employees with regard to maintaining, preserving and protecting students from violations of their right to personal security, bodily integrity, and Equal Protection of the Laws.

157. On information and belief, the School District has followed these unconstitutional customs and policies not only with regard to Plaintiff but also with regard to criminal and tortious misconduct committed against other School District students.

158. The School District's policies and/or practices constituted disparate treatment of males with disabilities and had a disparate impact on male students with disabilities.

159. Defendants Weeldreyer, Zydbel, and Title IX Coordinator are or were at the time of events complained of within, policymakers for the purpose of implementing the School District's unconstitutional policies or customs.

160. The Fourteenth Amendment to the United States Constitution provides in pertinent part that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

161. At MCL 380.1311(2), Michigan law provides that "if a pupil … commits criminal sexual conduct in a school building or on school grounds, the school board, or the designee of the school board … shall expel the pupil from the school permanently."

162. Plaintiff has suffered emotional distress and psychological damage, and his character and standing in his community have suffered from the harassment fostered as a direct and proximate result of Defendant School District's deliberate indifference to his rights under the Fourteenth Amendment.

## COUNT IV
### *MONELL* LIABILITY FOR FAILURE TO TRAIN AND SUPERVISE
### AS TO RESPONSE TO SEXUAL ASSAULTS/GENDER BASED BULLYING
### AS TO DEFENDANT FENNVILLE PUBLIC SCHOOL DISTRICT
### (42 U.S.C. § 1983)

163. Paragraphs one through 162 are hereby incorporated by reference as if set forth in full herein.

164. Defendants Weeldreyer, Zydbel, and Title IX Coordinator, were "state actors" working for Fennville Public School District, a federally funded school system.

165. Defendants Weeldreyer, Zydbel, and Title IX Coordinator acted under "color of law" when refusing to respond to Plaintiff's sexual assaults/gender based bullying on school premises.

166. Defendants Weeldreyer, Zydbel, and Title IX Coordinator failed to preserve Plaintiff's constitutional right to equal protection as guaranteed by the Fourteenth Amendment.

167. Under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff had the right to equal access to an educational environment free from harassment and discrimination.

168. Defendants Weeldreyer, Zydbel, and Title IX Coordinator should have known that their response to sexual assault/bullying allegations must comply with federal law, particularly as outlined in Title IX's published and widely promulgated implementing regulations.

169. Defendants Weeldreyer, Zydbel, and Title IX Coordinator each violated Plaintiff's right to equal access by:

    a. Failing to take immediate and appropriate action to investigate or otherwise determine what occurred once informed of possible sexual violence;

    b. Failing to take prompt and effective steps to end the sexual violence, prevent its recurrence, and address its effects, whether or not the sexual violence is the subject of a criminal investigation;

    c. Failing to take steps to protect the Plaintiff as necessary, including interim steps taken prior to the final outcome of the investigation;

    d. Failing to provide a grievance procedure for students to file complaints of sexual discrimination, including complaints of sexual violence. The procedures must include an equal opportunity for both parties to present witnesses and other evidence and the same appeal rights;

    e. Failing to use a preponderance of the evidence standard to resolve complaints of sex discrimination in grievance procedures; and

    f. Failing to notify both parties of the outcome of the complaint.

170. Defendant Fennville Public School District violated Plaintiff's Fourteenth Amendment right to equal protection by failing to properly train and supervise its employees as to these mandated investigative requirements.

171. These policies and/or practices constituted disparate treatment of males with disabilities and had a disparate impact on male students with disabilities.

172. Defendants' actions and lack of actions were the proximate cause of Plaintiff's emotional distress and psychological damage, and his character and standing in his community have suffered from the harassment fostered as a result of Defendant School District's deliberate indifference to his right to equal protection under the Fourteenth Amendment.

**COUNT V**
**DENIAL OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS IN VIOLATION OF THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983 AGAINST THE INDIVIDUALLY NAMED DEFENDANTS WEELDREYER, ZYDBEL AND TITLE IX COORDINATOR**

173. Plaintiffs repeat and re-allege the statements contained in paragraphs 1 through 172 as if fully restated herein.

174. Plaintiff Matthew Johnson was unable to complete his academic program in the Defendant School District due to the arbitrary and capricious manner he was treated by Defendant School District after the sexual assaults/gender-based bullying took place. This caused a substantial drop in his grades and he could not continue to attend classes or participate in athletics including basketball.

175. Plaintiff Johnson was entitled, under Substantive and Procedural Due Process, to a speedy determination of his requests for assistance in her education program (including special education) so that he would continue to be successful after the sexual assaults/gender based bullying. The faculty's repeated lack of response or a minimal response fell short of this standard for a male student with a disability.

176. Plaintiff Johnson repeatedly requested that he received proper and adequate support in his education program including special education for his ADHD but was denied.

177. Plaintiff Johnson made requests to be provided information regarding the investigation for the sexual assaults/bullying and the aftermath of sex-based harassment but he was denied.

178. Defendants failed to advise Plaintiff Johnson that he was entitled to file a Title IX Complaint and failed to identify any appeal process he may have had.

179. Plaintiff Johnson is informed and believes, and thereon alleges, that the individual Defendants by engaging in the aforementioned acts engaged in willful, malicious, intentional, oppressive and despicable conduct, and acted with willful and conscious disregard of Plaintiff Johnson's rights, welfare, safety, and sensibilities, thereby justifying an award of damages in an amount to be determined at trial.

180. Defendants, acting under color of law, have denied Plaintiff Johnson his right to procedural due process and the manner in which he was treated is completely arbitrary and capricious.

181. The Fifth Amendment to the Constitution made applicable to the states by the Fourteenth Amendment, prohibits persons acting under the color of the law, i.e., taking their property without justification, and acting outrageously and with intention to deprive persons of property and related rights.

182. Plaintiff Johnson has both a property interest and a liberty interest in his continued enrollment at Fennville Public Middle School, and that the Defendants' conduct or lack thereof unconstitutionally deprived him of both.

183. The courts have conceded that a student enrolled in a academic program has a property interest in the continuation of that education and that Plaintiff Johnson was denied this right when he was forced to move to another school district.

184. By the aforesaid acts and omissions of Defendants, and each of them, Plaintiff Johnson has been directly and legally caused to suffer actual damages including, but not limited to, damages for Plaintiff Johnson's psychological and emotional distress and damages, loss of standing in his community, damage to his reputation, and his family's unreimbursed out of pocket expenses incurred in response to these circumstances loss of earnings and future earning capacity, attorney's fees and costs prior to filing lawsuit in pro per, costs of suit and other pecuniary loss not presently ascertained, for which Plaintiff will seek leave of Court to amend when ascertained.

185. As a result of Defendants' acts as alleged herein, Plaintiffs pray for such relief as appropriate, including reasonable attorney's fees and costs prior to filing in pro per and costs of suit as provided in Michigan and Federal Code.

**COUNT VI – DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 AND TITLE II OF THE AMERICANS WITH DISABILITIES ACT OF 1990 AGAINST DEFENDANT FENNVILE PUBLIC SCHOOL DISTRICT**

186. Plaintiff repeats and re-alleges the statements contained in paragraphs 1 through 186 of this complaint as if fully restated herein.

187. Plaintiff, due to his anxiety and ADHD disorders, was unable to function in the stressful environment of the normal classroom.  Plaintiff requested accommodations for his disability that were reasonable by being allowed to participate in the Special Education Program.  Defendants denied this accommodation for arbitrary and capricious reasons.

33

188. Plaintiff, due to his anxiety and ADHD disorders, was unable to perform in some of the normal standardized academic and testing procedures.

189. Plaintiff required an alternate, less stressful location to perform his academics and testing in order to succeed.  If granted an alternate accommodation (such as the special education program), he would have been successful.

190. Pursuant to the federal Rehabilitation Act and Title II, Plaintiff was entitled to reasonable accommodations for his known disability within the School District's federally funded Programs including Special Education.

191. The Plaintiff's requests were reasonable accommodations given the totality of the circumstances.  There was absolutely no compelling reason, other than spite.

192. Defendant failed to provide the reasonable accommodations Plaintiff had requested for his disability.  The faculty failed to respond to Plaintiff's requests for reasonable accommodations.  This failure resulted in a delay in Plaintiff's anticipated date of high school graduation and poor academic success.

193. By the aforesaid acts and omissions of Defendants, and each of them, Plaintiff has been directly and legally caused to suffer actual damages including, but not limited to, loss of education, and future earning capacity, attorney's fees and costs prior to filing lawsuit in pro per, costs of suit, and other pecuniary loss not presently ascertained, for which Plaintiff will seek leave of Court to amend when ascertained.

**WHEREFORE**, Plaintiffs respectfully request judgment in their favor and against Defendants Fennville Public School District, and Defendants Weeldreyer, Zydbel, and Title IX Coordinator, as follows:

34

A. Compensatory damages for Plaintiff Johnson's psychological and emotional distress and damages, loss of standing in his community, damage to his reputation, and his family's unreimbursed out of pocket expenses incurred in response to these circumstances;

B. Punitive damages;

C. Injunctive relief requiring Defendant School District to take effective steps to prevent sex-based discrimination and harassment, including sexual assaults, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it.

D. Statutory interest;

E. Costs; and

F. Attorney's fees and costs prior to filing lawsuit and after filing of the lawsuit In Pro Per is an attorney is retained.

/s/ _Rl A Hati (Holt_

Rachael Martin (Holt), In Pro Per

Dated:  February ___, 2021

/s/ _Mat Jo_

Matthew Johnson, In Pro Per

Dated:  February ___, 2021

## JURY DEMAND

Now Comes the Plaintiffs, Rachael Martin (Holt) and Matthew Johnson demand a trial by jury.

/s/ _Rl A Martin (Holt)_

Rachael Martin (Holt), In Pro Per

Dated: February _1_, 2021

/s/ _Matth Joh_

Matthew Johnson, In Pro Per

Dated: February _1_, 2021